IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 23-60691-LRC |
| VIOLA DELORES GARRIS, | CHAPTER: 7 |
| DEBTOR. | JUDGE: LISA RITCHEY CRAIG |
| | |
| MCLP ASSET COMPANY, INC., | CONTESTED MATTER |
| MOVANT, | |
| v. | |
| VIOLA DELORES GARRIS, Debtor, | |
| CATHY L. SCARVER, Trustee, | |
| RESPONDENTS. | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that MCLP ASSET COMPANY, INC. has filed MOTION TO MODIFY AUTOMATIC STAY AS TO DEBTOR AND WAIVER OF THE 30-DAY REQUIREMENT OF 11 U.S.C. § 362(e) and related papers with the Court seeking an order granting relief.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion at **10:00 a.m.** on **January 11,  2024** in **Courtroom 1204**, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, **www.ganb.uscourts.gov**, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing.  You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise.  Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.

Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date.  Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: December 5, 2023

<u>/s/ Janica Drayton</u>
JANICA DRAYTON, ESQ.
Georgia Bar # 612147
PADGETT LAW GROUP
3490 Piedmont Road, NE
Suite 1475
Atlanta, GA 30305
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
janica.drayton@padgettlawgroup.com
*Attorney for Movant*

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 23-60691-LRC |
| VIOLA DELORES GARRIS, | CHAPTER:  7 |
| DEBTOR. | JUDGE:  LISA RITCHEY CRAIG |
| MCLP ASSET COMPANY, INC., | CONTESTED MATTER |
| MOVANT, | |
| v. | |
| VIOLA DELORES GARRIS, Debtor,<br>CATHY L. SCARVER, Trustee, | |
| RESPONDENTS. | |

## MOTION TO MODIFY AUTOMATIC STAY AS TO DEBTOR
## AND WAIVER OF THE 30-DAY REQUIREMENT OF 11 U.S.C. § 362(e)

**COMES NOW,** MCLP ASSET COMPANY, INC. (herein "Movant"), a secured creditor and/or party in interest in the above-captioned matter, and respectfully shows the Court as follows:

1.      This Motion is made pursuant to § 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed under applicable law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property pursuant to the underlying loan documents and applicable state law.

2.      The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on October 30, 2023.

3.      The Bankruptcy Code has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 362.

4.      Cathy L. Scarver is the duly designated Chapter 7 Trustee.

5.      Movant is the holder or servicer of a loan secured by certain real property in which Viola Delores Garris (herein "Debtor") has an interest, commonly known as 7050 John Rivers Road, Fairburn, GA 30213 (herein the "Property"), by virtue of a Promissory Note (herein the "Contract"), attached hereto as **Exhibit A**, along with a Security Deed executed by the Debtor, which is attached hereto as **Exhibit B,** and along with Assignments of Mortgage, which are attached hereto as **Exhibit C**, and along with a Loan Modification Agreement, which is attached hereto as **Exhibit D.** The Property is titled in the Debtor's name, who is obligated on the Contract.

6.      The Debtor's Statement of Intention states the Debtor proposes to retain the Property and enter into a Reaffirmation Agreement.

7.      As of November 8, 2023, Debtor is currently due for April 1, 2021 through July 1, 2021 payments in the amount of $591.34 each, payments due for August 1, 2021 through July 1, 2022 payments in the amount of $476.15 each, payments due for August 1, 2022 through July 1, 2023 payments in the amount of $523.06, and payments due for August 1, 2023 through November 1, 2023 in the amount of $429.31 each with a total delinquency of $16,073.12. Therefore, Movant is not receiving payments on the account and the Property is depreciating in value. The stay should be terminated for cause, including the lack of adequate protection of an interest in the Property of Movant, pursuant to 11 U.S.C § 362(d)(1).

8.      As of November 8, 2023, the total unpaid principal balance is $69,434.52 and the loan balance is $81,359.09.

9.      Movant, by and through undersigned counsel, waives the requirement of 11 U.S.C. §362(e) and agrees that, if a hearing cannot be held within thirty (30) days from the filing of this Motion, said hearing shall be set on the next available date.

10.     Because the loan documents so provide, Movant is entitled to reasonable attorney's fees and costs of $1,138.00 incurred in bringing this motion.

11.     Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived and that in the event the automatic stay is terminated as to the Property by order of the court and the case subsequently converts to another bankruptcy chapter, that the stay relief order remains in effect.

12.     Movant is without sufficient information to form a belief whether there are additional liens on the Property or to determine the amount of any encumbrances that may consume any available equity in the Property. Debtor's Schedules indicate that there are no additional liens on the Property. Movant's loan balance, along with costs of sale render little or no equity in the Property to benefit the estate.

13.     Movant asserts that there is no additional Collateral for its loan that can be foreclosed upon.

14.     Should stay relief be granted as to the Collateral, Movant, pursuant to terms of the Contract, may seek possession of the Collateral.

15.     Movant requests that if the stay is modified that Movant be permitted to contact Debtor(s) and/or Debtor(s)' counsel, as appropriate, through its agents, servicers and representatives for the purpose to enter into discussion and consideration of loss mitigation options, as relating to the loan documents. Movant asserts that Debtor(s) and their counsel are responsible for filing any court documents required for approval of any such agreement that may arise from such discussions.

16.     Pursuant to applicable local rules and O.C.G.A. § 44-14-162.2, the entity who has full authority to negotiate, amend or modify the terms of the aforementioned indebtedness is: NewRez LLC, f/k/a New Penn Financial LLC, d/b/a Shellpoint Mortgage Servicing, 55 Beattie Place, Suite 100 MS 561, Greenville, SC 29601, telephone number 1 (800) 365-7107.

**WHEREFORE**, Movant moves this Court for an Order, after Notice and Hearing,

1)  terminating the automatic stay as to Movant and the Collateral so that Movant (and any successors or assigns) may take any and all steps under non-bankruptcy law necessary to exercise any and all rights it may have under the law and its loan documents,

2)  allowing Movant to enforce its remedies to obtain possession of the Collateral,

3)  awarding Movant its reasonable fees and costs for this Motion,

4)  directing the Trustee to abandon the Collateral pursuant to 11 U.S.C. § 362,

5)  waiving the provisions of Fed. R. Bankr. P. 4001(a)(3), and

6)  for such other and further relief as the Court deems just and appropriate.

**RESPECTFULLY SUBMITTED** the 5th day of December, 2023.

<u>/s/ Janica Drayton</u>
JANICA DRAYTON, ESQ.
Georgia Bar # 612147
PADGETT LAW GROUP
3490 Piedmont Road, NE
Suite 1475
Atlanta, GA 30305
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
janica.drayton@padgettlawgroup.com
*Attorney for Movant*

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 23-60691-LRC |
| VIOLA DELORES GARRIS, | CHAPTER:  7 |
| DEBTOR. | JUDGE:  LISA RITCHEY CRAIG |
| MCLP ASSET COMPANY, INC., | CONTESTED MATTER |
| MOVANT, | |
| V. | |
| VIOLA DELORES GARRIS, Debtor, CATHY L. SCARVER, Trustee, | |
| RESPONDENTS. | |

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, an attorney with Padgett Law Group, certify that I am, and at all times hereinafter mentioned was more than 18 years of age; and

That on the 5th day of December, 2023, I served a copy of the within *Notice of Hearing* and *Motion to Modify Automatic Stay as to Debtor and Waiver of the 30-Day Requirement of 11 U.S.C. § 362(e),* filed herein, by first class U.S. Mail with adequate prepaid postage, or electronically via e-mail, to said respondents in this bankruptcy matter as follows:

**<u>Service by U.S. First Class Mail</u>**
*Pro Se Debtor*
**Viola Delores Garris**
7050 John Rivers Road
Fairburn, GA 30213

**<u>Service by Electronic Service</u>**
*Trustee*
**Cathy L. Scarver**
trusteescarver@bellsouth.net

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed On: December 5, 2023

/s/ Janica Drayton
JANICA DRAYTON, ESQ.
Georgia Bar # 612147

**EXHIBIT 'A'**

## ALLONGE TO NOTE

**LOAN NUMBER:** ▮▮▮▮▮▮▮

**NOTE DATE:** 2/17/2006

**LOAN AMOUNT:**   $ 94907.00

**NAME:** VIOLA D GARRIS

**PROPERTY ADDRESS:**   7050 JOHN RIVERS ROAD  FAIRBURN, GA 30213

**ORIGINAL LENDER:** BANK OF AMERICA, N.A.

**PAY TO THE ORDER OF:**


**WITHOUT RECOURSE: WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE
HOLDERS OF BANC OF AMERICA ALTERNATIVE LOAN TRUST 2006-3
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-3 BY NATIONSTAR
MORTGAGE LLC DBA MR. COOPER ITS ATTORNEY-IN-FACT**


BY: _____
        LATONYA DAVIS

**TITLE:  ASSISTANT SECRETARY**

LOAN NUMBER: ██████████

# NOTE

02/17/06                    FAIRBURN                              GA
[Date]                        [City]                          [State]

7050 JOHN RIVERS ROAD, FAIRBURN, GA 30213

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    94,907.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.500    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on APRIL 01, 2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    MARCH 01, 2031    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  BANK OF AMERICA, P.O. BOX 9000, GETZVILLE, NY 14068-9000    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    640.82    .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0                % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____    (Seal)
VIOLA D GARRIS                                               -Borrower

PAY TO THE ORDER OF                                          (Seal)
_____   -Borrower

WITHOUT RECOURSE
BANK OF AMERICA, N.A.                                        (Seal)
BY: _____                           -Borrower
CHRISTINA M. SCHMITT
ASSISTANT VICE PRESIDENT                                     (Seal)
_____   -Borrower

_____    (Seal)
                                                            -Borrower

_____    (Seal)
                                                            -Borrower

_____    (Seal)
                                                            -Borrower

_____    (Seal)
                                                            -Borrower

                                                            *(Sign Original Only)*

BS5N (0101)                          Page 3 of 3

BS5R 02/16/06 2:53 PM

Deed Book 42164 Pg   170
Filed and Recorded Mar-17-2006 10:25am
2006-0082919
Georgia Intangible Tax Paid $3.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

Return To: _LOAN #▮▮▮▮▮
Recording requested by: LSI
When recorded return to :
Custom Recording Solutions
2550 N. Redhill Ave. ▮▮▮▮
Santa Ana, CA. 92705▮
800-756-3524 ext. 5011
Prepared By:
  BANK OF AMERICA, N.A.
  1825 E. BUCKEYE ROAD
  PHOENIX, AZ 850340000
  Beth Rowe

——————— [Space Above This Line For Recording Data] ———————

# SECURITY DEED

LOAN # ▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  FEBRUARY 17, 2006          , together with all Riders to this document.
**(B) "Borrower"** is   VIOLA D. GARRIS

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is  BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01

VMP®–6(GA) (0005)
Page 1 of 15          Initials: V.D.G.
VMP MORTGAGE FORMS – (800)521-7291

Lender's address is    1825 E. BUCKEYE ROAD, PHOENIX, AZ 850340000

Lender is the grantee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated FEBRUARY 17, 2006 .
The Note states that Borrower owes Lender NINETY FOUR THOUSAND NINE HUNDRED SEVEN
AND 00/100                                                                          Dollars
(U.S. $      94,907.00      ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    MARCH 01, 2031                 .

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

Initials: N.D.B

VMP®–6(GA) (0005)                           Page 2 of 15                           Form 3011 1/01

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the   COUNTY                          [Type of Recording Jurisdiction]
of   FULTON                        [Name of Recording Jurisdiction] :

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

Parcel ID Number: ▮▮▮▮▮▮▮▮                    which currently has the address of
7050 JOHN RIVERS ROAD                                                [Street]
FAIRBURN                          [City] , Georgia 30213          [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

Initials: V.D.G.

-6(GA) (0005)                     Page 3 of 15                    Form 3011 1/01

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: ↻.Ɓ.Ɠ.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

Initials: _VDG_

-6(GA) (0005)                          Page 6 of 15                          Form 3011 1/01

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and

Initials: _____

Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

Initials: V.D.G.

—6(GA) (0005)                          Page 9 of 15                          Form 3011 1/01

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security

Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with

Initials: _V.D.G._

Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental

protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power**

and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)    *Viola D. Garris* (Seal)
-Borrower    VIOLA D GARRIS    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

**STATE OF GEORGIA,**    2-21-06    County ss: Fulton
Signed, sealed and delivered in the presence of:

Viola D. Garris

_____
Unofficial Witness
Zaira Harrison

Michelle J. Han    Clayton
Notary Public,    Michelle J. Hassan    County
State of Georgia

MICHELLE J. HASSAN
Notary Public, Clayton County, Georgia
My Commission Expires Jan. 27, 2009

VMP -6(GA) (0005)    Page 15 of 15    Form 3011 1/01

Deed Book 42164 Pg 185

Loan No.:

## EXHIBIT A
## LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 152 OF THE 7TH
DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED
AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY RIGHT-OF-WAY OF JOHNS RIVER ROAD
(HAVING A 60 FEET RIGHT-OF-WAY) A DISTANCE OF 2619.5 FEET SOUTH OF THE POINT
FORMED BY THE INTERSECTION OF THE EASTERLY RIGHT-OF-WAY LINE OF JOHNS RIVER
ROAD AND THE SOUTHERLY RIGHT-OF-WAY LINE OF RIVERTOWN ROAD; RUNNING
THENCE NORTHERLY 89 DEGREES 57 MINUTES EAST A DISTANCE OF 300.00 FEET TO AN
IRON PIN FOUND: RUNNING THENCE SOUTH 86 DEGREES 43 MINUTES 43 SECONDS EAST
A DISTANCE OF 102.26 FEET TO AN IRON PIN FOUND: RUNNING THENCE SOUTH 04
DEGREES 40 MINUTES 53 SECONDS EAST A DISTANCE OF 241.44 FEET TO AN IRON PIN
FOUND; RUNNING THENCE NORTH 89 DEGREES 09 MINUTES WEST A DISTANCE OF 100.00
FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 00 DEGREES 51 MINUTES WEST
A DISTANCE OF 45.80 FEET TO AN IRON PIN FOUND: RUNNING THENCE 05 DEGREES 26
MINUTES WEST A DISTANCE OF 2.20 FEET TO AN IRON PIN FOUND; RUNNING THENCE
SOUTH 89 DEGREES 57 MINUTES WEST A DISTANCE OF 302.20 FEET TO AN IRON PIN
FOUND; RUNNING THENCE NORTH 05 DEGREES 26 MINUTES WEST A DISTANCE OF 200.00
FEET TO AN IRON PIN FOUND ON THE EASTERLY RIGHT-OF-WAY LINE OF JOHNS RIVER
ROAD AND THE POINT OF BEGINNING; ALL AS SHOWN ON SURVEY BY PERIMETER
SURVEYING CO., INC., DATED APRIL 3.

APN:

Deed Book **42164** Pg   **186**
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

### Note to Clerk Concerning Intangible Recording Tax

Disclosure:      $94,907 of the face amount of the Note secured by this Security Deed represents a refinancing of unpaid principal on that certain previous long term note secured by real estate dated: 07/05/01, between the same parties and in original principal sum of $99,331, secured by that certain Security Deed recorded at Deed Book 30694, Page116 in Fulton county records. All intangible recording tax due on the previous long-term note has been paid.

*Tax calculation: The New note is the amount of $94,907, and after deducting from same the sum of $94,399, leaves a balance of $508.00 **(this is the unpaid principal balance)**, of the new principal upon which intangible tax of $3.00, is being paid with this Security Deed*

Deed Book **42164** Pg **187**
Filed and Recorded Mar-17-2006 10:25am
**2006-0082920**
Georgia Intangible Tax Paid $0.00
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

This instrument was prepared by:
Bank of America/Beth Rowe
9000 Southside Blvd., Bldg. 700
Jacksonville, FL 32256

■■■■■■■■■■■■

**Recording requested by: LSI**
**When recorded return to :**
**Custom Recording Solutions**
**2550 N. Redhill Ave.** ■■■■
**Santa Ana, CA. 92705** ■■■■
**800-756-3524 ext. 5011**
Account #: ■■■■■■■■■■■

**Real Estate Subordination Agreement**
**(Bank of America to Bank of America)**

This Real Estate Subordination Agreement ("Agreement") is executed as of 02/24/2006, by Bank of America, N.A., having an address of 9000 Southside Blvd. Jacksonville, FL 32256

("Subordinator"), in favor of Bank of America, N.A., having an address for notice purposes of
Bank of America
4161 Piedmont Parkway
Greensboro, NC 27410

**Whereas,** Subordinator is the owner and holder of, or creditor under, the indebtedness described in and secured by a security instrument (deed of trust, deed to secure debt or mortgage) dated 01/09/2003, executed by Viola D. Garris

and which is recorded in Volume/Book 34103, Page 221 , and if applicable, Document Number 2003-0040051, of the land records of Fulton County, GA, as same may have been or is to be modified prior hereto or contemporaneously herewith (the "Senior Lien"), encumbering the land described therein (said land and such improvements, appurtenances and other rights and interests regarding said land, if any, as are described in the Senior Lien being called herein collectively, the "Property"); and

**Whereas,** Bank of America has been requested to make a loan, line of credit or other financial accommodation to Viola D. Garris
(jointly and severally, "Borrower"), to be secured by, without limitation, either a deed of trust, deed to secure debt or mortgage (the "Junior Lien"), covering without limitation, the Property and securing the

(for use in AR, CO, CT, FL, GA, IA, IL, KS, KY, MD, MI, MN, MO, NC, NM, NJ, NY, OK, SC, TN, TX, and VT)

■■■■■■■■■■■■

Deed Book 42164 Pg 188

indebtedness described therein including the payment of a promissory note, line of credit agreement or other borrowing agreement made by Borrower and/or others payable to the order of Bank of America in the maximum principal face amount of $ 94,907.00 (the "Principal Amount") **[For North Carolina only – bearing interest and payable as therein provided at the maximum rate of       % for a period not to exceed       months]**, including provisions for acceleration and payment of collection costs (the "Obligation"); the Junior Lien and the Obligation to contain such other terms and provisions as Bank of America and Borrower shall determine; and

*Please recorded concurrently w/ the new mortgage.*

**Now, Therefore,** for valuable consideration, Subordinator hereby subordinates the Senior Lien to Bank of America's Junior lien, subject to the terms of this Agreement.  The Subordinator's Senior Lien is subordinated to Bank of America's Junior Lien only to the extent of the Principal Amount of the Obligation and any amounts advanced pursuant to the terms of the Obligation or the security instrument for the payment of insurance premiums, taxes, costs of collection, protection of the value of the property or Bank of America's rights in the Property or foreclosure.  All other rights of Subordinator now or hereafter existing in or with respect to the Property (including but not limited to all rights and to proceeds of insurance and condemnation) are hereby subordinated, and are and shall remain completely and unconditionally subordinate, to the Junior Lien and the rights of Bank of America regardless of the frequency or manner of renewal, extension, consolidation or modification of the Junior Lien or the Obligation.

This Agreement shall inure to the benefit of the Subordinator and Bank of America and their respective successors and assigns, including any purchaser(s) (at foreclosure or otherwise) of the Property or any part thereof, and their respective successors and assigns.

**Bank of America N.A.**

Two witness signatures required in CT, FL, GA, SC and TN

**By:** Pamela E. Sinclair

**Its:** AVP of Loan Solutions

**02/24/06**

**Date**

Witness Signature

**Witness Signature**

**Beth Rowe**

**Typed or Printed Name**

**Witness Signature**

**Kim Diaz**

**Typed or Printed Name**

**Bank of America Acknowledgment:**

State/Commonwealth/District of Florida

County/City of Duval

> **DONNA CADE**
> Notary Public, State of Florida
> My comm. expires August 28, 2006
> No. DD145734

On this the 24 day of February 2006, before me, Donna Cade the undersigned officer, personally appeared Pamela E. Sinclair, who acknowledged him/herself to be the AVP of Loan Solutions of Bank of America, N.A., and that (s)he, as such AVP of Loan Solutions, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by him/herself as AVP of Loan Solutions.  In witness whereof I hereunto set my hand and official seal.

Witness to Acknowledgment (South Carolina Only)

**Signature of Person Taking Acknowledgment**

Donna Cade

Commission Expiration Date: 08/28/06

(for use in AR, CO, CT, FL, GA, IA, IL, KS, KY, MD, MI, MN, MO, NC, NM, NJ, NY, OK, SC, TN, TX, and VT)

Deed Book **42164** Pg **189**
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

Loan Number █████████

# EXHIBIT A
# LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 152 OF THE 7TH DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY RIGHT-OF-WAY OF JOHNS RIVER ROAD (HAVING A 60 FEET RIGHT-OF-WAY) A DISTANCE OF 2619.5 FEET SOUTH OF THE POINT FORMED BY THE INTERSECTION OF THE EASTERLY RIGHT-OF-WAY LINE OF JOHNS RIVER ROAD AND THE SOUTHERLY RIGHT-OF-WAY LINE OF RIVERTOWN ROAD; RUNNING THENCE NORTHERLY 89 DEGREES 57 MINUTES EAST A DISTANCE OF 300.00 FEET TO AN IRON PIN FOUND: RUNNING THENCE SOUTH 86 DEGREES 43 MINUTES 43 SECONDS EAST A DISTANCE OF 102.26 FEET TO AN IRON PIN FOUND: RUNNING THENCE SOUTH 04 DEGREES 40 MINUTES 53 SECONDS EAST A DISTANCE OF 241.44 FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 89 DEGREES 09 MINUTES WEST A DISTANCE OF 100.00 FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 00 DEGREES 51 MINUTES WEST A DISTANCE OF 45.80 FEET TO AN IRON PIN FOUND: RUNNING THENCE 05 DEGREES 26 MINUTES WEST A DISTANCE OF 2.20 FEET TO AN IRON PIN FOUND; RUNNING THENCE SOUTH 89 DEGREES 57 MINUTES WEST A DISTANCE OF 302.20 FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 05 DEGREES 26 MINUTES WEST A DISTANCE OF 200.00 FEET TO AN IRON PIN FOUND ON THE EASTERLY RIGHT-OF-WAY LINE OF JOHNS RIVER ROAD AND THE POINT OF BEGINNING; ALL AS SHOWN ON SURVEY BY PERIMETER SURVEYING CO., INC., DATED APRIL 3.

APN: ██████████

EXHIBIT 'C'

Deed Book 53833 Pg   440
Filed and Recorded May-22-2014 11:41am
2014-0167350
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

This space for Recorder's use

Recording Requested By:
Bank of America, N.A.
Prepared By:
Diana De Avila
800-444-4302
1800 Tapo Canyon Road
Simi Valley, CA 93063

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

Property Address:
7050 John Rivers Road
Fairburn, GA 30213-2758

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby sell, assign, transfer and convey unto **WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF BANC OF AMERICA ALTERNATIVE LOAN TRUST 2006-3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006 -3** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

Beneficiary:          **BANK OF AMERICA, N.A.**
Made By:              **VIOLA D. GARRIS**
Date of Security Deed: **2/17/2006**
Original Loan Amount:  **$94,907.00**

Recorded in **Fulton County, GA** on: **3/17/2006, book 42164, page 170 and instrument number 2006-0082919**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on
**5-16-14**

Bank of America, N.A.

By: _____          By: _____
        Martha Munoz                          Beverly Brooks
     Assistant Vice President              Assistant Vice President

Witness: _____      Witness: _____
          Aida Duenas                          Cecilia Rodriguez

Deed Book 53833 Pg  441
Cathelene  Robinson
Clerk of Superior Court
Fulton County, Georgia

State of California
County of Los Angeles  Ventura

On  MAY 1 6 2014  before me,  **D. Nieblas**  , Notary Public, personally
appeared  *Martha Munoz*  and  Beverly Brooks  , who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person
(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

D. NIEBLAS
COMM. # 2057846
NOTARY PUBLIC • CALIFORNIA
VENTURA COUNTY
My Commission Expires
February 14, 2018

Notary Public:  **D. Nieblas**
My Commission Expires:  **Exp. 2/14/2018**         (Seal)

DocID#

Deed Book 55091 Pg  442
Filed and Recorded Jun-24-2015 08:51am
2015-0202910
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Recording Requested By: Nationstar Mortgage
When Recorded Return To: DOCUMENT ADMINISTRATION, Nationstar Mortgage 8950 CYPRESS WATERS
BLVD, COPPELL, TX  75019

### CORPORATE ASSIGNMENT OF SECURITY DEED

Fulton, Georgia
**SELLER'S SERVICING #**    "GARRIS"

Date of Assignment: June 11th, 2015
Assignor: BANK OF AMERICA, N.A. BY NATIONSTAR MORTGAGE LLC AS ITS ATTORNEY-IN-FACT at 8950
CYPRESS WATERS BLVD, COPPELL, TX  75019
Assignee: WELLS FARGO BANK N.A., AS TRUSTEE FOR BANC OF AMERICA ALTERNATIVE LOAN TRUST
2006-3 at 1525 S. BELTLINE ROAD, COPPELL, TX  75019

Executed By: VIOLA D. GARRIS  To: BANK OF AMERICA, N.A.
Date of Security Deed:  02/17/2006 Recorded:  03/17/2006  in Book/Reel/Liber: 42164 Page/Folio: 170 as
Instrument No.: 2006-0082919  In the County of Fulton, State of Georgia.

Assessor's/Tax ID No.

Property Address: 7050 JOHN RIVERS ROAD, FAIRBURN, GA  30213

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $94,907.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

BANK OF AMERICA, N.A. BY NATIONSTAR MORTGAGE LLC AS ITS ATTORNEY-IN-FACT
On June 11th, 2015

By: _____
JUSTIN MOON, Assistant Secretary

By: _____
Michelle Bowles
Vice-President

WITNESS _____
VALENCIA METCALF

WITNESS _____
Bernardo Hernandez, Jr.

Deed Book 55091 Pg 443
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On June 11th, 2015, before me, ERIC TODD RITTMUELLER, a Notary Public in and for Dallas in the State of Texas, personally appeared JUSTIN MOON, Assistant Secretary and _____ Michelle Bowles _____ , Vice-President , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

ERIC TODD RITTMUELLER
Notary Expires: 10/09/2017

ERIC TODD RITTMUELLER
Notary Public, State of Texas
My Commission Expires
October 09, 2017

(This area for notarial seal)

Deed Book 63640 Page 628
Filed and Recorded 04/21/2021 12:45:00 PM
2021-0162861
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs:

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF SECURITY DEED

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, FORMERLY KNOWN AS NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL OR BANKING CAPACITY, BUT SOLELY IN ITS CAPACITY AS TRUSTEE FOR BANC OF AMERICA ALTERNATIVE LOAN TRUST 2006-3, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE NRZ PASS-THROUGH TRUST V, WHOSE ADDRESS IS, 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Security Deed is executed by **VIOLA D GARRIS** to **BANK OF AMERICA, N.A.** and recorded in Deed **Book 42164 and Page 170** in the office of the Clerk of the Superior Court of **FULTON** County, **Georgia**.

**IN WITNESS WHEREOF,** the undersigned has hereunto set its hand **this 21st day of April in the year 2021. WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, FORMERLY KNOWN AS NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL OR BANKING CAPACITY, BUT SOLELY IN ITS CAPACITY AS TRUSTEE FOR BANC OF AMERICA ALTERNATIVE LOAN TRUST 2006-3, by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, its Attorney-in-Fact**

By: _____
**ALVARO ZELEDON**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and delivered on the date above and in the presence of:

_____
**TALIA QIAO**
**WITNESS**

STATE OF FLORIDA    COUNTY OF PINELLAS
Sworn to (or affirmed) and subscribed before me by means of [X] physical presence or [ ] online notarization on this 21st day of April in the year 2021, by Alvaro Zeledon as VICE PRESIDENT for NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER as Attorney-in-Fact for WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, FORMERLY KNOWN AS NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL OR BANKING CAPACITY, BUT SOLELY IN ITS CAPACITY AS TRUSTEE FOR BANC OF AMERICA ALTERNATIVE LOAN TRUST 2006-3. He/she is personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument.

_____
**VALERA KRISTOF**
**COMM EXPIRES: 09/19/23**



VALERA KRISTOF
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG 914976
EXPIRES: 09/19/2023

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

Deed Book 64221 Page 275
Filed and Recorded 07/30/2021 01:11:00 PM
2021-0260236
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs:

**GEORGIA**

COUNTY OF **FULTON**

LOAN NO.:

WHEN RECORDED MAIL TO: ATTN: **CYNTHIA M. BROCK**, **FIRST AMERICAN MORTGAGE SOLUTIONS**, **1795 INTERNATIONAL WAY**, **IDAHO FALLS, ID 83402**, PH. **208-528-9895**

# CORPORATE ASSIGNMENT

FOR VALUE RECEIVED, **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST V**, located at **C/O SHELLPOINT MORTGAGE SERVICING 55 BEATTIE PLACE, SUITE 110, MS#01, GREENVILLE, SC 29601**, Assignor, does this day transfer, assign, convey, and deliver unto **GOLDMAN SACHS  MORTGAGE COMPANY**, located at **6011 CONNECTION DRIVE, 5TH FLOOR, IRVING, TX 75039**, Assignee, its successors, representatives, and assigns, all of Assignor's right, title, and interest in and to that certain Security Deed in the principal sum of  **$94,907.00**, dated **FEBRUARY 17, 2006**, executed by **VIOLA D. GARRIS**, Original Grantor, to **BANK OF AMERICA, N.A.**,  Original Grantee, and filed for record and recorded on **MARCH 17, 2006** in Deed Book **42164** at Page **170** as Instrument No. **2006-0082919** in the Office of the Clerk of the Superior Court in the County of **FULTON**, State of **GEORGIA**.

**SEE ATTACHED LEGAL DESCRIPTION**

The Assignor herein specifically transfers, conveys and assigns to the above Assignee, its successors, representatives, and assigns the aforesaid Security Deed, the property described therein, together with all the powers, options, rights, privileges, and immunities contained therein on the undersigned.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this _____ **JUL 2 8 2021** _.

**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST V, BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT**

**CYNTHIA M. BROCK, MANAGER**

STATE OF **SOUTH CAROLINA**              COUNTY OF **GREENVILLE**          ) ss.

SIGNED, SEALED, AND DELIVERED in the presence of the below named Notary Public, as an official witness and below named unofficial witness, on _____ **JUL 2 8 2021** _____, by **CYNTHIA M. BROCK, MANAGER,** of **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST V, BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT**:

Notary Public/Official Witness:

~~Joseph Cooper~~ (COMMISSION EXP.

NOTARY PUBLIC

Unofficial Witness:

Jess Espinoza , Witness



Deed Book 64221 Page 277
CATHELENE ROBINSON
Clerk of Superior Court

LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 152 OF THE 7TH
DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED
AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY RIGHT-OF-WAY OF JOHNS RIVER ROAD
(HAVING A 60 FEET RIGHT-OF-WAY) A DISTANCE OF 2619.5 FEET SOUTH OF THE POINT
FORMED BY THE INTERSECTION OF THE EASTERLY RIGHT-OF-WAY LINE OF JOHNS RIVER
ROAD AND THE SOUTHERLY RIGHT-OF-WAY LINE OF RIVERTOWN ROAD; RUNNING
THENCE NORTHERLY 89 DEGREES 57 MINUTES EAST A DISTANCE OF 300.00 FEET TO AN
IRON PIN FOUND; RUNNING THENCE SOUTH 86 DEGREES 43 MINUTES 43 SECONDS EAST
A DISTANCE OF 102.26 FEET TO AN IRON PIN FOUND; RUNNING THENCE SOUTH 04
DEGREES 40 MINUTES 53 SECONDS EAST A DISTANCE OF 241.44 FEET TO AN IRON PIN
FOUND; RUNNING THENCE NORTH 89 DEGREES 09 MINUTES WEST A DISTANCE OF 100.00
FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 00 DEGREES 51 MINUTES WEST
A DISTANCE OF 45.80 FEET TO AN IRON PIN FOUND; RUNNING THENCE 05 DEGREES 26
MINUTES WEST A DISTANCE OF 2.20 FEET TO AN IRON PIN FOUND; RUNNING THENCE
SOUTH 89 DEGREES 57 MINUTES WEST A DISTANCE OF 302.20 FEET TO AN IRON PIN
FOUND; RUNNING THENCE NORTH 05 DEGREES 26 MINUTES WEST A DISTANCE OF 200.00
FEET TO AN IRON PIN FOUND ON THE EASTERLY RIGHT-OF-WAY LINE OF JOHNS RIVER
ROAD AND THE POINT OF BEGINNING; ALL AS SHOWN ON SURVEY BY PERIMETER
SURVEYING CO., INC , DATED APRIL 3.

Deed Book 65613 Page 233
Filed and Recorded 04/28/2022 09:58:00 AM
2022-0169513
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: ███████

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

——— Space above for Recorder's use ———

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **GOLDMAN SACHS MORTGAGE COMPANY**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **MCLP ASSET COMPANY, INC.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: **2/17/2006**
Original Loan Amount: **$94,907.00**
Executed by (Borrower(s)): **VIOLA D. GARRIS**
Original Lender: **BANK OF AMERICA, N.A.**
Filed of Record: In Book **42164**, Page **170**
Document/Instrument No: **2006-0082919** in the Recording District of **Fulton, GA**, Recorded on **3/17/2006**.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **7050 JOHN RIVERS ROAD, FAIRBURN, GEORGIA 30213**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **4/20/2022**

**GOLDMAN SACHS MORTGAGE COMPANY, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MARK THOMAS WATERMAN**
Title: **VICE PRESIDENT**

Witness Name: **DOMINIC KOCH**

Witness Name: **LISA V. HARRIS**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of    **PINELLAS**

On **4/20/2022**, before me, **MONICA HASTEY-MCMAHON**, a Notary Public, personally appeared **MARK THOMAS WATERMAN, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR GOLDMAN SACHS MORTGAGE COMPANY**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **MARK THOMAS WATERMAN** signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_(Notary Name):_ **MONICA HASTEY-MCMAHON**
My commission expires: 9/6/2025

MONICA HASTEY-MCMAHON
Notary Public
State of Florida
Comm# HH172753
Expires 9/6/2025

## EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 152 OF THE 7TH DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY RIGHT-OF-WAY OF JOHNS RIVER ROAD (HAVING A 60 FEET RIGHT-OF-WAY) A DISTANCE OF 2619.5 FEET SOUTH OF THE POINT FORMED BY THE INTERSECTION OF THE EASTERLY RIGHT-OF-WAY LINE OF JOHNS RIVER ROAD AND THE SOUTHERLY RIGHT-OF-WAY LINE OF RIVERTOWN ROAD; RUNNING THENCE NORTHERLY 89 DEGREES 57 MINUTES EAST A DISTANCE OF 300.00 FEET TO AN IRON PIN FOUND; RUNNING THENCE SOUTH 86 DEGREES 43 MINUTES 43 SECONDS EAST A DISTANCE OF 102.26 FEET TO AN IRON PIN FOUND; RUNNING THENCE SOUTH 04 DEGREES 40 MINUTES 53 SECONDS EAST A DISTANCE OF 241.44 FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 89 DEGREES 09 MINUTES WEST A DISTANCE OF 100.00 FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 00 DEGREES 51 MINUTES WEST A DISTANCE OF 45.80 FEET TO AN IRON PIN FOUND; RUNNING THENCE 05 DEGREES 26 MINUTES WEST A DISTANCE OF 2.20 FEET TO AN IRON PIN FOUND; RUNNING THENCE SOUTH 89 DEGREES 57 MINUTES WEST A DISTANCE OF 302.20 FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 05 DEGREES 26 MINUTES WEST A DISTANCE OF 200.00 FEET TO AN IRON PIN FOUND ON THE EASTERLY RIGHT-OF-WAY LINE OF JOHNS RIVER ROAD AND THE POINT OF BEGINNING; ALL AS SHOWN ON SURVEY BY PERIMETER SURVEYING CO., INC., DATED APRIL 3.

APN: ███████████

EXHIBIT 'D'

**After Recording Return To:**
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**This Document Prepared By:**
Azra Habibija
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

_____ [Space Above This Line For Recording Data] _____

Unpaid Principal Balance: **$72,800.38**                                    Loan No.█████████
Original Loan Amount: **$94,907.00**
New Money: **$3,080.78**
**New Loan Amount: $75,881.16**

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): **VIOLA D. GARRIS.** Dated this 15th day of August, 2016. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"): **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019**

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): _____, ____ and recorded in Book/Liber **N/A**, Page **N/A**, Instrument No: **N/A**, of the Official Records of County, **GA**.

Property Address ("Property"): **7050 JOHN RIVERS RD**
                                                **FAIRBURN, GA 30213**

**Legal Description:**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 11/15                                                                  Form 3157  3/09 (rev. 10/10) *(page 1 of 7 pages)*

A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G. I have made or will make all payments required under a trial period plan.

H. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

Our records indicate that you are the Debtor in an active bankruptcy proceeding. Please be advised that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If approval of the loan modification is required, Nationstar will not honor the loan modification agreement until evidence of the required approval is provided.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification**. If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **September 1, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **September 1, 2016**.

A. The Maturity Date will be: **August 1, 2056**.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past

due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $75,881.16 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  Interest at the rate of **3.125%** will begin to accrue on the New Principal Balance as of **August 1, 2016** and the first new monthly payment on the New Principal Balance will be due on **September 1, 2016**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 3.125% | August 01, 2016 | $277.14 | $110.47 May adjust periodically | $387.61 May adjust periodically | September 01, 2016 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.  **Additional Agreements**.  I (the borrower) agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce

decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i)

consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.    In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P.   This Agreement modifies an obligation secured by an existing security instrument recorded in County, GA, upon which all recordation taxes have been paid.  As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $72,800.38.  The principal balance secured by the existing security instrument as a result of this Agreement is $75,881.16, which amount represents the excess of the unpaid principal balance of this original obligation.

Q.   In the event of any action(s) arising out of or relating to this Agreement or in connection with any

foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**VIOLA D. GARRIS** -Borrower

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
8306 11/15                                    Form 3157  3/09  (rev. 10/10) *(page 6 of 7 pages)*

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name: _____
Title: **Assistant Secretary**

_____ 8/31/16
Date of Lender's Signature

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 11/15                                                                              Form 3157  3/09  (rev. 10/10) *(page 7 of 7 pages)*

Loan No.:
Borrower: VIOLA D. GARRIS

# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, VIOLA D. GARRIS ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated *August 15, 2016* (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency



AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12

Loan No.: ██████████
Borrower: VIOLA D. GARRIS

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

*Viola D. Garris*                                      Date: 8/15/16

**VIOLA D. GARRIS**  -Borrower

## LOAN MODIFICATION
## CLARITY COMMITMENT

Thank you for making your trial period payments. This Clarity Commitment is intended to be a clear and simple summary of the final loan modification that we are pleased to offer you under the U.S. Department of Justice and State Attorneys General national mortgage settlement. The loan modification will help put you in a better position to meet your loan obligation. When you sign and return the enclosed loan modification agreement you are agreeing to a new and permanent loan modification. Please thoroughly review all of the enclosed documents to ensure that you understand the details of your loan modification agreement.

**Summary of Your Modified Loan**

| Your New Principal Balance is calculated as follows: | | |
|---|---|---|
| Current Principal Balance | $72,800.38 | This is the unpaid balance before we modify your outstanding principal balance. |
| Past Due Fees (+) | $70.00 | This amount represents fees, charges, and other costs that may have accrued due to the delinquency status of your loan. Late fees are not included and will be waived when your loan modification is finalized. |
| Escrow Advances (+) | $705.22 | Advances we have made on your behalf for payment of taxes & insurance. |
| Past Due Interest (+) | $2,314.32 | Unpaid and deferred interest. |
| Unapplied Funds (-) | $8.76 | Amounts previously paid but not credited to the loan. This amount is typically any portion of a trial payment that has been paid but not yet applied to the loan. |
| Combined Principal Balance (=) | $75,881.16 | Total amount owed before we modify your loan. |
| Interest Bearing UPB (=) | $75,881.16 | This is the capitalized New Principal Balance less any forbearance or principal reduction amounts. Borrower will make monthly payments and interest on this amount. |

Your final payment date, which is your maturity date, is **August 1, 2056.**

**Your New Mortgage Payments**

Your new total modified monthly mortgage payments of **$387.61** are made up of principal and interest of **$277.14** and an initial escrow amount of **$110.47.** Escrow payments are collected for payment of items such as property taxes and insurance may change. We will notify you of any adjustments to the total monthly payment.

If you have questions regarding the modification agreement or the steps you must take to complete this process, please call me at **480-467-0429** Monday through Thursday from 8:00 a.m. - 8:00 p.m. (CT), Friday from 8:00 a.m. - 6:00 p.m., Saturday 9:00 a.m. - 1:00 p.m.